IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

TAMI DENIO,

    Plaintiff,

vs.                                                         Civ. No. 01-249 WWD/DJS

SEARS, ROEBUCK AND CO., a
New York corporation, and LYNN
FAHNESTOCK,

    Defendants.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon Defendant's Motion for Summary Judgment [docket no. 39] filed December 28, 2001.

### *Background*

In her complaint, Plaintiff sets out six causes of action. In the first claim, Plaintiff contends that she was discriminated against on the basis of sex in violation of 42 U.S.C. § 2000(e) and the New Mexico Human Rights Act, § 28-1-1 *et seq*, N.M.Stat. Ann. (1978 Comp.). Plaintiff's second claim is for breach of contract. Plaintiff's third claim is for breach of implied covenant of good faith and fair dealing. Plaintiff's fourth claim is based on her alleged wrongful discharge. Plaintiff's fifth claim alleges negligent or intentional misrepresentation. Plaintiff's sixth claim is for violation of COBRA[1].

---

[1]The Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA) amended the Employee Retirement Income Security Act of 1974 (ERISA) to permit a beneficiary of an employer's group health plan to elect continuing coverage when he or she might otherwise lose that benefit because of a "qualifying event", such as the termination of employment.

-1-

### *Undisputed Facts*[2]

The following facts are claimed by Defendants to be undisputed, to wit:

1. In April 1999, Ms. Denio enrolled in the Sears Regional Management Training Program and completed the program in July, 1999.

2. When Plaintiff completed the management training program in July, 1999, there was no position open for a sales manager.

3. Because there was no sales manager position open in July, 1999, Plaintiff was not given a permanent position as a sales manager. Rather, Plaintiff rotated to different departments and assisted on a temporary basis.

4. Plaintiff was never paid as a manager. Her job classification while in the management training program and while she helped with managing other departments temporarily was as an hourly employee.

5. *In August, 1999, Danny Vigil and Linda Driscoll enrolled in the management training program. In October, 1999, they completed the management training program. Again, neither Vigil nor Driscoll were given a management position when they completed the training program because the first position that became open was not until November, 1999.*

Plaintiff's assertion that "both Vigil and Driscoll were assigned management positions as soon as they came open, while Plaintiff was ignored" does not contradict assertions made with respect to Vigil and Driscoll in Defendant's statement of undisputed material facts, and

---

[2]Disputed "facts" are in italics and are individually discussed.

it is misleading insofar as it indicates that Plaintiff was ignored. Undisputed fact #5 will be considered as being an undisputed fact.

      6.     In November, 1999, a sales manager position became available in the Santa Fe Sears store. Plaintiff was offered the management position in Santa Fe but turned it down.

      7.     *Soon after Lynn Fahnestock became the general manager of the Coronado Sears Store in January, 2000, he made the decision not to consider Plaintiff for a management position because of complaints about her during her temporary management rotations.*

      8.     *Fahnestock made his own observation about Plaintiff's lackadaisical performance and what he considered her poor work ethic.*

      9.     *In addition, Fahnestock also received written documentation of Plaintiff's performance problems. At least three female managers noted Plaintiff's performance problems. For example, Debbie Olguin, a Sears manager, wrote a memorandum dated January 10, 2000, setting forth her complaints about Plaintiff's performance. Olguin stated Plaintiff had received customer complaints, showed a lack of interest in her work, and was very negative. Similarly, Elaine Otero, another Sears manager, wrote a memorandum dated January 14, 2000, setting forth her complaints about Plaintiff's performance. Otero noted in her memorandum Plaintiff's extended absences, her failure to complete assignments, and her failure to follow schedules. In addition, Pam Meyer, also a Sears manager, wrote a memorandum dated February 25, 2001, setting forth her*

> *complaints about Plaintiff's performance. Like Otero, Meyer noted Plaintiff's*
> *unexcused absences and her inability to follow schedules.*

In disputing Defendant's asserted facts 7, 8, and 9, Plaintiff first alleges that Fahnestock made the decision to deny Plaintiff a management position, within days of becoming the general manager at Sears. The testimony of Sonya Marie Gruby, Debbie Olguin, and Elaine Otero cited to support Plaintiff's assertion simply does not do so; however, the chronology does support Plaintiff's assertion. The statements from the other employees may indicate that Fahnestock was making inquiry as to Plaintiff's work performance. Although Plaintiff contends that the documentation obtained from certain supervisors was sought because Fahnestock knew that those supervisors did not like Plaintiff, and that Plaintiff had worked in several departments (presumably other than those where reports were solicited), Plaintiff makes no suggestion that people from any other department would report favorably on her. Plaintiff also complains that Fahnestock never addressed the complaints received from others nor did he give her a chance to remedy these "defects" in her performance as required by Sears policy before summarily removing her from management consideration.

> 10. *The former store general manager, Duane Thornton, confirmed that at least*
> *Debbie Olguin also spoke to him about concerns as to Plaintiff's poor work ethic.*

Plaintiff attempts to dispute Sears undisputed fact #10 by saying that Debbie Olguin's opinion of Plaintiff's work ethic is merely an opinion, and that her complaints were not substantial enough for action by the previous store manager, Mr. Thornton. The fact that Debbie Olguin did speak to the former store manager concerning Plaintiff's poor work ethic is unrefuted. Undisputed fact #10 will be considered as being an undisputed fact.

11. In January, 2000, after being told she would not be considered for a management position, Plaintiff became a commissioned sales associate.

12. *Fahnestock gave Plaintiff a sales associate position in the highest compensated division at the Coronado Store (washers and dryers) where her targeted earnings were actually more than she was earning as a management trainee.*

Plaintiff attempts to dispute paragraph 12 by pointing out that she had sought a management position and that she was hired and placed in a trainee program for such a position. The fact that Fahnestock gave Plaintiff a sales position as stated in paragraph 12 is unrefuted, as are her potential earnings in that capacity.

13. Plaintiff signed her EEOC charge of discrimination in June 2000.

14. Plaintiff resigned on July 14, 2000.

15. Plaintiff did not have any negative interaction with Mr. Fahnestock from the time he advised her she would not be managing her own department until the time she left her employment with Sears.

16. *Since Fahnestock became the general manager of the Sears Coronado Store, he promoted at least nine women: (1) he promoted Karen Guererro to an executive position; (2) he promoted Angela West to the manager of the shoe department; (3) he promoted Vanessa Bright to the manager of the men's department; (4) he promoted Crystal Phelps to home fashions and carpet; (5) he promoted Erica Wade to intimate apparel manager; (6) he, along with another manager, promoted Nicki Torres to an assistant manager; (7) he promoted Mary Garcia to the Synergy program; (8) he promoted Pam Meyer, giving her two departments to manage; (9) he promoted Mary Hutton, also giving her additional responsibilities.*

Although Plaintiff points out that a number of women in management positions left Sears during Fahnestock's management, and that in the opinion of some employees he may have discriminated against women, the assertions made in Defendant's undisputed fact #16 are unrefuted. Undisputed fact #16 will be considered as being an undisputed fact.

> 17. *Sears computer records indicate a COBRA notice was sent to Plaintiff. More specifically, on June 27, 2000, a COBRA letter was created for Plaintiff. The COBRA archive reflects that Plaintiff's COBRA notice was sent to 4521 Trumbull, SE, in Albuquerque. However, Plaintiff's address in July, 2000, was not on Trumbull Street; it was on Stonebrook Street. There is no evidence Plaintiff advised Sears of her change of address. In fact, Sears listed Plaintiff's Trumbull address on her 2000 IRS form W-2.*

Plaintiff requested COBRA benefits and documents regarding those benefits, and she let the human resources director for Sears know that she needed that coverage. She also telephoned the Sears store and talked to the human resources director "around the first of August 2000" and never heard back from the human resources director. The timing of the COBRA notice and the COBRA letter as well as the alleged phone call from Plaintiff to the human resources director, is such that it is difficult to tell the sequence of the events; however, Plaintiff may have failed to notify Defendant of her address change, so any correspondence sent to Plaintiff by Defendant would have been delayed or returned undelivered. There is no evidence to refute Defendant's allegation as to this being an undisputed fact. Undisputed fact #17 will be considered as being an undisputed fact.

> 18. *Plaintiff's COBRA claim arises from unreimbursed medical expenses related to surgery on her eye which occurred on August 22, 2000.*

Plaintiff denies that her COBRA claim is limited to the unreimbursed medical expenses related to surgery on her eye; however, Plaintiff does not deny that those expenses would fall under a COBRA claim nor does she deny that the surgery on her eye took place on August 22, 2000. The portion of Plaintiff's deposition cited to support Plaintiff's contention that her COBRA claim was not limited to her eye surgery expense does not refute the assertion made in No. 18 above.

*19. Plaintiff never inquired about her COBRA notification after her surgery.*

Although Plaintiff disputes the assertion made in paragraph 19 above, she testified that she did not contact the director of human services, Doris Hubert, after her surgery on August 22, 2000. There is nothing in the record to the contrary. Undisputed fact #19 will be considered as being an undisputed fact.

20. Plaintiff claimed that had she been promoted to a sales manager, she would have earned approximately $27,000 to $30,000 to year. Even if true for purposes of this Motion, Plaintiff concedes she earned $35,000 at Victoria's Secret, which is where she was employed after Sears. Plaintiff admits that her salary at Victoria's Secret "exceeded her highest wage at Sears."

21. *Plaintiff also claims that she would have received an additional $10,000 per year in bonuses as a manager at Sears. However, Plaintiff's speculation as to potential bonuses is not based on any evidence. Moreover, the evidence contradicts Plaintiff's claim that she would have been entitled to $10,000 in bonuses. Bonuses are determined primarily by sales goals. Therefore, the higher a manager's sales volume, the higher the bonus. Electronics was the highest volume department at the Coronado Store. Therefore, the manager of the electronics department would*

-7-

*have the potential for making one of the highest bonuses. Jennifer Johnson, the former manager of the electronics department at Sears, only had the potential to earn approximately $6,000 per year in bonuses, although she never actually earned the maximum bonus while at Sears. There is no evidence in the record as to which department Plaintiff would have been promoted had Fahnestock not changed her employment status from a management trainee to a sales associate, or how much the potential or actual bonus would have been for such department. Therefore, the amount of bonus Plaintiff may have obtained had she been a sales manager is wholly speculative.*

Both Defendant's argumentative "Undisputed Fact #21" and Plaintiff's disputation of that "fact" are sufficiently speculative that I decline to accept paragraph 21 as a factual assertion.

22. Sears corporate office reimburses the local store for a management trainee's salary for the sixteen weeks of the training program. After the sixteen weeks, the local store pays for the trainee's salary. Because a trainee who is not selling product as a manager or a commissioned sales associate is not making money for the local store, his or her salary becomes a loss for the local store after the corporate office stops reimbursing the local store for that salary when the sixteen week training program is finished. Accordingly, the idea is to place a person as soon as possible after the training program in a position where s/he can sell.

## *DISCUSSION.*

### *Standard for Summary Judgment.*

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Kaul v. Stephan, 83 F.3d 1208, 1212 (10th Cir.1996); Fed.R.Civ.P. 56(c). " 'When applying this standard, we examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. If there is no genuine issue of material fact in dispute, then we next determine if the substantive law was correctly applied by the district court.' " 83 F.3d at 1212 (quoting Wolf v. Prudential Ins. Co. of Am., 50 F.3d 793, 796 (10th Cir.1995)). *from* Butler v. City of Prairie City, Kan., 172 F.3d 736, 744 (10th Cir. 1999).

*Title VII claim law.*

To prove a prima facie case in connection with her "demotion" Plaintiff must show that (1) she belongs to a protected class, (2) that she was adversely affected by the challenged employment decision, (3) that despite being qualified, she was demoted or not promoted, and (4) the job from which she was demoted was not eliminated. Jones v. Denver Post Corp., 203 F.3d 748, 753 (10th Cir. 2000). If, after Plaintiff has established a prima facie case, Defendants can offer a facially nondiscriminatory reason for its employment action involving Plaintiff, then, for Plaintiff to prevail, Plaintiff must produce evidence from which a jury could conclude that the "reason" for the employment action was pretextural. Kendrick v. Penske Transp. Serv. Inc., 220 F. 3d 1220, 1226 (10th. Cir. 2000).

*"Facts" discussed in determining motion.*

For purposes of this motion I consider the following numbered facts to be undisputed, to wit: 1-16.

When Fahnestock informed Plaintiff that she would not be considered for a manager position he had the information that she had declined such a position in Santa Fe, that the managers in the departments where she had filled in did not report favorably on her, and that he

had personally observed her work habits and had found them unsatisfactory. Additionally, there were no manager positions open at that time and the store was bearing an additional expense by keeping Plaintiff in a trainee status. Fahnestock may not have liked Plaintiff's work performance but there is no showing that he acted adversely toward her because she was a woman. The number of women promoted by Fahnestock along with the fact that there was no negative interaction between Plaintiff and Fahnestock after he informed her that she would not be considered for a manager position , argue against Fahnestock's alleged bias against women. In putting Plaintiff into a sales position in the department where her earnings potential could be expected to be higher than in other departments or as a trainee, Fahnestock again failed to show any bias against Plaintiff for being a woman or on any other basis.

### *Title VII claim (Count I).*

Although, as a woman, Plaintiff was a member of a protected class, it is not clear that assigning her as a sales associate after she had declined a management position was a demotion. Even if the employment action were found to be a demotion, there were valid business reasons for the action under the circumstances set out above; and the reasons were not pretextural. Defendant is entitled to summary judgment on this claim.

### *The contract claims (Counts II and III).*

Although Sears argues that while Plaintiff was a management trainee she was not an "associate"; and that , therefore, she was not subject to or entitled to (as the case may be) the provisions of the "Sears Human Resource Guide for Managers" under the provisions covering an "associate, " I decline to rule as a matter of law that these conclusions are correct with the necessary corollary that while an "associate" has certain contractual protections, an unassigned management trainee has none. Likewise, the allegation concerning the failure on the part of Sears

to act in good faith and to deal fairly with Plaintiff, is sufficiently subjective and subject to interpretation as to militate against summary disposition.

### *Wrongful discharge claim (Count IV).*

Plaintiff resigned; however, she claims to have been wrongfully discharged. There is no showing that Plaintiff was under any undue pressure or harassment which caused her to resign. The only event which she can point to is that she was told that she would not be offered another management position, and was then offered a sales position. There was no negative interaction with Fahnestock or any other supervisory Sears employee which is in any way noted between January of 2000, and Plaintiff's resignation in July of 2000. The resignation letter, with copies to Plaintiff's present counsel and to the EEOC, contained no suggestion as to why Plaintiff was resigning. To summarize, there is no showing whatsoever of any aggravating circumstances which would have made Plaintiff's working conditions so intolerable as to force Plaintiff to resign. The wrongful discharge claim fails because there is no demonstrated foundation upon which to base such a claim. *See*, Bennett v.Quark, 258 F.3d 1220, 1229 (10th Cir. 2001).

### *Misrepresentation claim. (Count V).*

Defendant contends that the fact that Plaintiff was offered a management position in Santa Fe in and of itself defeats Plaintiff's misrepresentation claim. I disagree. Under Sears' rationale, the offer of a management position anywhere would negate the misrepresentation claim, and I will not so find as a matter of law.

### *COBRA claim. (Count VI.)*

Plaintiff's COBRA claim brings up possibly conflicting testimony which present questions of fact. Certainly, Sears has some corroboration of its assertion that proper notification was sent to Plaintiff; however, this is not, in my opinion, conclusive. I note that Plaintiff mentioned her

COBRA claim as early as her letter of resignation, and that she claims to have telephoned Sears about the claim later. Obviously either Plaintiff or Sears failed to follow up properly. This determination should be made by the finder of fact and not in a summary judgment.

**WHEREFORE,**

**IT IS ORDERED** that Defendant Sears' Motion for Summary Judgement is **GRANTED** with respect to Counts I and IV of the Complaint, and those Counts are dismissed..

**IT IS FURTHER ORDERED** that in all other respects, Defendant's Motion for Summary Judgment is **DENIED.**

_____
UNITED STATES MAGISTRATE JUDGE